UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NL INDUSTRIES, INC.,

       Plaintiff,

                **DECISION AND ORDER**
                10-CV-89A

  v.

HALLIBURTON COMPANY,
HALLIBURTON ENERGY SERVICES, INC., and
EXIDE TECHNOLOGIES,

       Defendants.[1]

## I. INTRODUCTION

Pending before the Court is a motion by defendants Halliburton Company and Halliburton Energy Services, Inc. ("Halliburton" collectively) to dismiss plaintiff's amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). Halliburton seeks dismissal of plaintiff's claims, made principally under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601–9675, for two reasons. Halliburton contends that some or all of plaintiff's liability to the federal government has been resolved. Halliburton contends also that the applicable

---

[1] The Clerk of the Court is directed to conform the caption of this case to the caption of this Decision and Order, which reflects the addition of a defendant through the amended complaint (Dkt. No. 7).

limitations period has expired for the only mechanism by which plaintiff could recover under CERCLA. Plaintiff has other claims in its amended complaint that Halliburton wants dismissed on various grounds including ripeness and preemption. In opposition to the pending motion, plaintiff contends that it is entitled to reimbursement of response costs under the plain language of CERCLA and that none of its claims is untimely, unripe, or preempted. The Court held oral argument on October 26, 2010. For the reasons below, the Court will dismiss Count Two of the amended complaint without prejudice but otherwise will deny the motion.

## II. BACKGROUND

This case concerns efforts by the Environmental Protection Agency ("EPA") to clean up lead contamination in the soil of the Village of Depew, New York. Plaintiff is a New Jersey corporation that operated a 7.5-acre brass foundry at 3241 Walden Avenue in Depew from 1892 to 1972. Plaintiff sold the parcel in 1974. Around 2002, plaintiff arranged for soil sample testing at certain residential properties (the "Phase I Site") around plaintiff's former foundry, in response to allegations from the EPA that airborne emissions from plaintiff's historical operations contaminated the Phase I Site with hazardous concentrations of lead. The soil sample testing confirmed high concentrations of lead at the Phase I Site.

In response to the EPA's investigation of soil contamination, plaintiff and the EPA entered an Administrative Order on Consent ("AOC") in September

2004. (See Dkt. No. 37-2.) The AOC specified the terms of plaintiff's voluntary "performance of a removal action" in Phase I. (Dkt. No. 37-2 at 2 ¶ 1.). Among notable paragraphs, Paragraph 50 of the AOC stated that the EPA was the final arbiter of required activities and that it could require the performance of additional work unilaterally. Paragraph 87 stated that the EPA retained the right to seek any legal or equitable relief to enforce the terms of the AOC and the right to sue plaintiff under Section 107 of CERCLA[2] for recovery of any response costs that it incurred and that plaintiff did not reimburse. Paragraph 89 stated that nothing in the AOC constituted a satisfaction of or release from any liability that plaintiff or others had under CERCLA. Paragraphs and 98 and 99 together shielded plaintiff from contribution claims in connection with Phase I efforts but does not preclude the EPA from asserting contribution or other claims against anyone else.

The rights that the EPA reserved for itself under the AOC came into play a few years later when it expanded the scope of its cleanup efforts. Plaintiff completed the Phase I work specified in the AOC in 2007. Subsequently, however, the EPA investigated other residential neighborhoods in Depew (the "Phase II Site") and found high lead concentrations in the soil there as well. The EPA asked plaintiff to perform Phase II remedial activities. The EPA made the

---

[2] To avoid confusion between CERCLA's internal numbering and its numbering in U.S. Code, the Court clarifies here that "Section 107" of CERCLA is equivalent to 42 U.S.C. § 9607 and that "Section 113" is equivalent to 42 U.S.C. § 9613.

same request, among other parties, to Halliburton, which is a corporate successor to a historic operation in Depew that was unrelated to plaintiff's former foundry but that also allegedly released lead into the surrounding environment. When all of the parties contacted declined to engage in any Phase II efforts voluntarily, the EPA undertook the efforts itself. Pursuant to Section 107 of CERCLA, however, the EPA sent plaintiff a letter demanding reimbursement for response costs that it had incurred to that point and that it would incur in the future.

Plaintiff commenced this case against Halliburton and two other defendants[3] in response to the costs that it incurred under Phase I and that the EPA likely will pursue under Phase II. Plaintiff's amended complaint contains five claims labeled as counts. Count One is a claim for reimbursement under Section 107 of CERCLA. Count Two is a claim for contribution under Section 113 of CERCLA on the grounds that plaintiff has resolved its liability to the EPA for some or all of the costs associated with the two phases of cleanup. Count Three is a claim for a declaratory judgment that defendants are liable for response costs or damages including future response costs or damages. Count Four is a claim against defendants for common-law indemnification. Count Five is a claim against defendants for common-law contribution. The theme across all five

---

[3] Plaintiff had named ACF Industries LLC as a defendant but released it through a stipulation dated August 19, 2010. Plaintiff also named Exide Technologies as a defendant; that defendant has not appeared.

4

counts of the amended complaint is that plaintiff does not want to be the sole company paying remedial costs given that the EPA identified Halliburton and others as contributors to the contamination of residential soil.

Through the pending motion, Halliburton seeks dismissal of each of the counts in the amended complaint for reasons related to timing and the nature of the AOC that plaintiff entered with the EPA. Halliburton seeks dismissal of Count One on the grounds that the AOC resolved some or all of plaintiff's liability to the EPA and thus precludes recovery under Section 107. Halliburton seeks dismissal of Count Two on the grounds that plaintiff commenced this case more than three years after it entered the AOC—a time interval that Halliburton considers the relevant limitations period—and thus has run out of time to maintain a Section 113 claim. Halliburton seeks dismissal of Count Three on the grounds that declaratory judgment for any Phase II costs would be premature, since plaintiff has not undertaken any Phase II activities and since the EPA is not currently attempting to hold plaintiff liable for any costs associated with Phase II activities. Halliburton seeks dismissal of Counts Four and Five as preempted by CERCLA and barred by Section 15-108 of New York's General Obligations Law. Generally, plaintiff opposes all of these arguments by noting that CERCLA Sections 107 and 113 work in tandem to allow for recovery of cleanup costs; that either a longer limitations period applies to Count Two or that no triggering event

5

has occurred to start the clock on a shorter limitations period; that a declaratory judgment here is mandatory under the plain language of Section 113; and that neither preemption nor any state law operates against its common-law claims.

## III. DISCUSSION

### A. *Motions to Dismiss Generally*

Halliburton has made several arguments for dismissal. Each argument requires a different analysis. To the extent, however, that the arguments require an assessment of the allegations in plaintiffs' complaint, the Court will proceed through each argument by "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 61 (2d Cir. 2010) (internal quotation marks and citation omitted). The accepted allegations and reasonable inferences will include plaintiff's assertions that the EPA has approached Halliburton regarding Phase II cleanup and that Halliburton qualifies as a potentially responsible party ("PRP") under one or more of the four definitions of a PRP set forth in Section 107(a).

### B. *Count One—Plaintiff's Section 107 Claim*

A natural or corporate person who is a PRP under Section 107(a)(1-4) "shall be liable for . . . any other necessary costs of response incurred by *any other person* consistent with the national contingency plan . . . ." 42 U.S.C. § 9607(a)(4)(B) (emphasis added); *see also U.S. v. Atl. Research Corp.*, 551 U.S.

128, 135–36 (2007) ("[I]t is natural to read the phrase 'any other person' by referring to the immediately preceding subparagraph (A), which permits suit only by the United States, a State, or an Indian tribe. The phrase 'any other person' therefore means any person other than those three. Consequently, the plain language of subparagraph (B) authorizes cost-recovery actions by any private party, including PRPs.") (citations omitted). Here, plaintiff entered an AOC that required reimbursing the EPA for some of that agency's costs but also required "the performance of a removal action" in Phase I. (Dkt. No. 37-2 at 2 ¶ 1.) The AOC does not prevent the EPA from "requiring [plaintiff] in the future to perform additional activities pursuant to CERCLA or any other applicable law." (*Id.* at 28 ¶ 87.) Under the plain language of the AOC, then, plaintiff not only has incurred cleanup costs directly from remedial efforts that it has undertaken but also may have to incur such costs in the future as the EPA directs. Plaintiff thus has a legally cognizable claim against Halliburton under Section 107, and the Court denies defendant's motion with respect to Count One.

Halliburton's argument that the AOC resolved some or all of plaintiff's liability is not persuasive and does not affect the Court's analysis.[4] The EPA set

---

[4] Plaintiff pled a resolution of some or all of its liability to sustain its Section 113 claim (*see* Dkt. No. 7 at 6 ¶ 30), though it later argued to the contrary (*see* Dkt. No. 41 at 16). The Court "may also consider documents or information in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint. These documents can be taken into consideration when deciding a motion to dismiss, without converting the motion to one for summary judgment . . . ." *Smith v. Am. Eagle Airlines, Inc.*, No. 07 CV

7

forth in Paragraph 89 of the AOC that "nothing in this Order constitutes or shall be construed as a satisfaction of or release from any claim or cause of action against [plaintiff] . . . for any liability that [plaintiff] . . . may have under CERCLA . . . including, but not limited to, any claims of the United States for injunctive relief, costs, damages, and interest under Sections 106(a) and 107 of CERCLA . . . ." (*Id.* at 28 ¶ 89.) *Compare id. with Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 126 (2d Cir. 2010) ("Once NiMo completed the Consent Order responsibilities, NiMo was 'deemed to have resolved its liability to the State for purposes of contribution protection provided by CERCLA Section 113(f)(2)' and thus was 'entitled to seek contribution.'") Under these circumstances, the only issue that the AOC settled was whether the EPA would sue plaintiff in 2004. Plaintiff chose voluntarily to forestall litigation at that time, but likely will face litigation from the EPA in the future since it declined the EPA's request to join in Phase II cleanup efforts. The AOC settled nothing regarding plaintiff's ultimate liability. Although the parties have argued extensively about whether *Niagara Mohawk* eliminates plaintiff's Section 107 claim, that case has no bearing on this one because the Second Circuit there expressly refused to

---

3363, 2008 WL 2600857, at *2 (E.D.N.Y. July 1, 2008) (citations omitted). "If these documents contradict the allegations of the amended complaint, the documents control and this Court need not accept as true the allegations in the amended complaint." *Rapoport v. Asia Elecs. Holding Co., Inc.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) (citation omitted). Here, the AOC is referenced in the amended complaint, and its plain language overrides any party's contention about plaintiff's liability to the EPA, including plaintiff's contradictory position.

8

"decide whether a § 107(a) action could be pursued by a PRP that incurs clean up costs after engaging with the federal or a state government, *but is not released from any CERCLA liability*." Niagara Mohawk, 596 F.3d at 127 n.17 (emphasis added). Absent guidance to the contrary from a higher court, this Court holds that qualified CERCLA plaintiffs do not lose timely access to Section 107 so long as they have incurred costs directly, *i.e.*, by performing the cleanup work themselves, and that any attempt to distinguish direct costs resulting from a judgment, a legal settlement, a consent decree that resolves liability, or an administrative order on consent that does not resolve any liability is mere wordplay. *See Atl. Research*, 551 U.S. at 139 ("A private party may recover under § 107(a) without any establishment of liability to a third party. Moreover, § 107(a) permits a PRP to recover only the costs it has 'incurred' in cleaning up a site. When a party pays to satisfy a settlement agreement or a court judgment, it does not incur its own costs of response. Rather, it reimburses other parties for costs that those parties incurred.") (citation omitted). In contrast, CERCLA plaintiffs cannot access Section 107 if, ultimately, they are only paying money to a governmental agency or another PRP that performed the cleanup work.

C. *Count Two—Plaintiff's Section 113 Claim*

"Any person may seek contribution from any other person who is liable or potentially liable under [Section 107(a)], during or following any civil action under [Sections 106 or 107(a)]." 42 U.S.C. § 9613(f)(1). "The natural meaning of this

9

sentence is that contribution may only be sought subject to the specified conditions, namely, 'during or following' a specified civil action." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 166 (2004). The plaintiff in *Aviall* was in the same position as plaintiff here—namely, a plaintiff attempting claims under Sections 107 and 113 simultaneously from the beginning of the lawsuit. This parallel between *Aviall* and this case is important, because it means that a brand-new case that has not been settled at least in part does not count when trying to determine whether a contribution claim has been raised "during or following" a civil action. Here, plaintiff has only this case on which to rely when trying to establish its contribution claim. Plaintiff has not sued Halliburton at any other time. As of the time of this Decision and Order, no one has sued plaintiff and imposed some sort of percentage of liability on it that it could try to alter through a contribution claim. As a result, although plaintiff might have a contribution claim against Halliburton in the future, any attempt to seek contribution now is premature. *See Aviall*, 543 U.S. at 166 ("[I]f § 113(f)(1) were read to authorize contribution actions at any time, regardless of the existence of a § 106 or § 107(a) civil action, then Congress need not have included the explicit 'during or following' condition. In other words, Aviall's reading would render part of the statute entirely superfluous . . . . Likewise, if § 113(f)(1) authorizes contribution actions at any time, § 113(f)(3)(B), which permits contribution actions after settlement, is equally superfluous. There is no reason why Congress would

10

bother to specify conditions under which a person may bring a contribution claim, and at the same time allow contribution actions absent those conditions.") (citation omitted). Accordingly, the Court grants this aspect of Halliburton's motion and dismisses Count Two. This dismissal, however, is without prejudice to renew the claim if plaintiff experiences an assignment of liability at some point in time, in this or another civil action, that it wishes to alter through contribution.

### D. *Count Three—Plaintiff's Claim for Declaratory Judgment*

"In any [Section 107 action], the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2); *see also Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 92 (2d Cir. 2000) ("The proper remedy for future response costs is not a present lump-sum payment of anticipated expenses but instead a declaratory judgment award dividing future response costs among responsible parties.") (citations omitted); *accord Goodrich Corp. v. Town of Middlebury*, 311 F.3d 154, 175 (2d Cir. 2002) (citing *Gussack*). Because the present case is new and has not proceeded through discovery to a resolution of plaintiff's Section 107 claims, this Court will not issue a declaratory judgment anytime soon. A declaratory judgment will be appropriate, however—in fact, it will be mandatory under Section 113(g)(2)—if plaintiff ultimately establishes by a preponderance of the evidence that it will incur future response costs for which Halliburton will be at least partly

responsible. Plaintiff's request for a declaratory judgment thus is legally cognizable. Accordingly, the Court denies Halliburton's motion with respect to Count Three.

### E. *Counts Four and Five—Plaintiff's Common-Law Claims*

Counts Four and Five in plaintiff's amended complaint set forth claims to common-law indemnification and contribution. Halliburton rests its argument for dismissal of these counts on two different statutory provisions: Section 113(f)(3)(C) of CERCLA, which states that "[a]ny contribution action brought under this paragraph [concerning persons not a party to a settlement] shall be governed by Federal law"; and Section 15-108(c) of New York's General Obligations Law, which states that any "tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person." As noted above, however, plaintiff's Section 113 claim has been dismissed, albeit without prejudice. Additionally, as also noted above, the AOC did not release plaintiff from liability in any ultimate and definitive way. The statutory bases for Halliburton's argument thus do not apply. Halliburton has not identified any other reason why plaintiff's common-law claims are not legally cognizable. The Court accordingly denies Halliburton's motion with respect to Counts Four and Five.

## IV. CONCLUSION

For all of the foregoing reasons, the Court grants Halliburton's motion to dismiss (Dkt. No. 12) in part and dismisses Count Two of plaintiff's amended

complaint without prejudice. The Court denies Halliburton's motion in all other respects.

Halliburton shall answer the amended complaint within 20 days of entry of this Decision and Order.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: November 2, 2010