UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

═══════════════════════════════════

NL INDUSTRIES, INC.,

                        Plaintiff,

        v.                              DECISION AND ORDER
                                          10-CV–89

ACF INDUSTRIES,
GOULD ELECTRONICS, INC., et al.,

                        Defendants.

═══════════════════════════════════


## INTRODUCTION

        This case involves efforts by the Environmental Protection Agency (the

"EPA") to clean-up lead contamination in the soil of the Village of Depew, New

York (the "Superfund Site").[1]  Plaintiff NL Industries, Inc. ("NL Industries" or

"plaintiff") is a New Jersey corporation that operated a 7.5-acre brass foundry

within the Superfund Site from 1892 to 1972.  Defendants are all former owners

(or successors in interest) to properties also located in or near the Superfund

Site.  Plaintiff alleges that pursuant to an agreement with the EPA, it has incurred

and will continue to incur significant costs for clean-up and removal of hazardous

materials at the site.  Plaintiff alleges that defendants (or their predecessors)

─────────────────

        [1]  The facts and procedural background described herein reflect the allegations
set forth in plaintiff's fourth-amended complaint as well as the submissions made by the
parties with respect to the motion to dismiss and subsequent objections.

contributed to the contamination of the Superfund Site, and has filed a claim for

cost recovery and/or contribution pursuant to the Comprehensive Environmental

Response, Compensation and Liability Act of 1980 ("CERCLA").  Plaintiff also

seeks a declaratory judgment against defendants for costs that, plaintiff claims,

the EPA will likely assess or pursue against plaintiff in the future for continued

removal and clean-up.

Defendant Gould Electronics, Inc. ("Gould") formally operated a steel plant

and foundry on the Superfund Site that produced railroad car couplers, as well as

a storage battery works plant that produced lead-acid batteries.  Gould moved to

dismiss plaintiff's fourth-amended complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6), on the grounds that plaintiff's CERCLA claims are time-

barred and its request for declaratory judgment is premature and not ripe.[2]  Gould

also argues that plaintiff's state law claims for contribution and indemnification are

preempted by CERCLA.

The matter was referred to Magistrate Judge Hugh B. Scott pursuant to 28

U.S.C. §636(b)(1)(B).  Magistrate Judge Scott issued a Report and

Recommendation recommending: (1) that Gould's motion to dismiss the CERCLA

_____

[2]  After Gould filed the instant motion to dismiss, Magistrate Judge Scott granted
NL Industries leave to amend the complaint for the fourth time to add a new defendant.
The fourth-amended complaint supercedes the third-amended complaint, which would
ordinarily moot the present motion to dismiss.  However, since the allegations in the
fourth- amended complaint are not changed as against defendant Gould, the motion to
dismiss is deemed to be against the fourth-amended complaint.

cost recovery claim based upon statute of limitations ground be denied; (2) that Gould's motion to dismiss the declaratory judgment action be granted; and (3) that Gould's motion to dismiss the state law contribution and indemnification claims be granted.  Defendant filed objections to Magistrate Judge Scott's recommended denial of its motion to dismiss the CERCLA cost recovery claim, and plaintiff filed objections to Magistrate Judge Scott's recommendation to grant dismissal of the declaratory judgment claim.

For the foregoing reasons, the Court adopts Magistrate Judge Scott's recommendation to deny the motion to dismiss with respect to the CERCLA cost recovery claim (Count I) and grant the motion to dismiss with respect to the state law contribution and indemnification claims (Counts III and IV).  However, the Court rejects Magistrate Judge Scott's recommendation to grant the motion to dismiss with respect to the declaratory judgment claim (Count II).

## RELEVANT FACTS

In September 2004, NL Industries signed an Administrative Order on Consent ("AOC") agreeing to conduct specified response activities at the Superfund Site under the supervision of the EPA.  The work required by the AOC involved the excavation and removal of soil containing hazardous materials and replacement with clear fill, in order to abate any imminent danger to the public health and welfare in the surrounding residential neighborhood.  The complaint

refers to this location and clean-up as the "Phase I Site".  NL Industries alleges

that it completed work at the Phase I Site in February 2007, and that it incurred

significant costs in conducting those response activities.  NL Industries alleges

that Gould, among other defendants, contributed to the contamination of the

Phase I Site through aerial deposition and the sale and/or disposal of lead-

bearing waste which was used as fill materials in connection with the

development of properties in the area.

The complaint further alleges that upon subsequent investigation, the EPA

determined that additional response activities were required at additional

properties.  Plaintiff's complaint refers to these additional properties, and the

anticipated clean-up, as the Phase II Site.  The EPA then began response

activities at the Phase II Site.  The EPA determined that Gould, along with other

defendants, were potentially responsible parties for contamination of the Phase II

Site as well.  Plaintiff alleges that Gould's aerial disposition and the sale and/or

disposal of contaminated fill produced waste containing lead and other hazardous

substances also contributed to contamination at the Phase II Site.

Plaintiff seeks cost recovery from defendants, including Gould, for its actual

expenditures during the Phase I Site removal, and a declaratory judgment for any

amount plaintiff may be assessed by the EPA as a result of the Phase II Site

removal.  Plaintiff also asserts claims for indemnification and common law

contribution.  As explained in detail below, plaintiff's claims for cost recovery

under CERCLA and a declaratory judgment are sufficiently pled and may proceed.  However, plaintiff's claims for indemnification and contribution shall be dismissed.

## DISCUSSION

### CERCLA's Statute of Limitations

CERCLA provides that an initial claim for recovery of costs in a removal action must be commenced within three years after completion of the removal action.  *See* 42 U.S.C. §9613(g)(2)(A).  Here, the parties appear to agree that the clean-up and removal actions undertaken at both the Phase I Site and the Phase II Site constitute a "removal action" within the meaning of Section 101(23) of CERCLA.  *See* 42 U.S.C. §9601(23).  However, Gould argues that the Phase I Site clean-up and the Phase II Site clean-up constitute two separate removal actions.  Gould maintains that since plaintiff did not file the instant claim against defendants until over four years after the Phase I Site clean-up was completed, plaintiff's cost recovery action under CERCLA must be dismissed as time-barred. Plaintiff, on the other hand, argues that the Phase I Site and Phase II Site clean-ups constitute a single removal action, and therefore the statute of limitations for recovery with respect to the Phase I Site costs does not begin to run until removal has also been completed at the Phase II Site.

When ruling on a motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6), the Court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Starr v. Georgeson S'Holder, Inc.*, 412 F.3d 103, 109 (2d. Cir. 2005). A complaint should be dismissed only if it fails to contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When a court considers a motion under Rule 12(b)(6), it may take into account the complaint as well as "any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference." *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d. Cir. 2001). Moreover, the Second Circuit has held that in assessing a motion to dismiss, a court may consider a document not incorporated by reference into the complaint "where the complaint 'relies heavily upon its terms and effects,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d. Cir. 2010); *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d. Cir. 2006); *see also Youssef v. Halcrow, Inc.*, 504 Fed. Appx. 5 (2d. Cir. 2012) ("in assessing the defendant's motion to dismiss, the district court properly considered an addendum to [plaintiff's] employment application, which [plaintiff] attached as an exhibit to his opposition, as that document was 'integral' to [plaintiff's] allegation that he, and not his employer, was the owner of the engineering design.")

As noted by the Magistrate Judge, plaintiff's complaint does not provide any specific details about the metes and bounds of the Phase I Site and the Phase II Site.  However the complaint does characterize the Phase I Site and the Phase II Site as being part of the same Superfund Site, and states that the clean-up of the Phase II Site was initiated based upon the EPA's findings with regard to the Phase I Site.  The allegations in the complaint indicate that both plaintiff and defendants were considered potentially responsible parties with respect to both sites, and that it was the same activities on the part of Gould, over the same period of time, that lead to soil contamination at both Sites.  The Court finds that these allegations sufficiently establish that the Phase II Site clean-up was a continuation of the Phase I Site clean-up, making them both part of the same removal action under CERCLA.

Indeed, exhibits produced by plaintiff in response to defendant's motion to dismiss the complaint confirm that it was during the EPA's Phase I Site remediation that the EPA detected lead contamination at the Phase II Site. Specifically, the EPA found that "[g]iven the proximity of the Phase I and Phase 2 areas, the residential use of both areas and the analytical data, the findings of the 2003 health consultation for the Phase 1 area are considered generally applicable to the Phase II area."  As a result of these findings, the EPA proposed an AOC for the Phase II Site and identified both plaintiff and defendant as potentially responsible parties.  In a letter to plaintiff dated December 17, 2007,

7

the EPA noted the following:

> NL [Industries] recently completed the remediation of lead-contaminated soils at 36 residential properties at the Site.  During these response activities, referred to as Phase I, EPA identified 61 additional properties as containing lead-contaminated soils at unacceptable levels, at concentrations greater than 400 parts per million.  Accordingly, EPA has determined that additional response, referred to as Phase 2 Response Activities, are necessary to address the conditions at the Site.

These letters and documents are integral to plaintiff's allegation that the EPA considered the properties at the Phase I Site and the Phase II Site to be a part of the same Superfund Site, and that their findings with respect to the lead-contamination in residential soils at the Phase I Site was extended to include the Phase II Site as well.  Importantly, these documents support the conclusions set forth in the complaint, namely that the analysis and clean-up of the Phase II Site was a continuation of the work performed at the Phase I Site such that they were part of the same removal action for purposes of CERCLA.

This reading is consistent with rulings by other courts in this district as well as circuit courts outside of this district.  In 2011, the Northern District of New York recognized that "regardless of the number of operating units at a site, there can be only one remedial action for any given facility."  *New York State Elec. & Gas Corp. V. FirstEnergy Corp.*, Civ. A. No. 3:03-CV-0438, 2011 WL 3471079, at *82 (N.D.N.Y. July 11, 2011).  In addition, the Fifth and Tenth Circuits acknowledge that it was Congress' intent that all removal activities conducted at a site be

considered a single removal action for statute of limitations purposes, even if conducted in several phases over many years.  *See Colorado v. Sunoco, Inc.*, 337 F.3d 1233, 1241 (10th Cir. 2003) (the language of CERCLA indicates that there will be one removal action per site or facility); *Geraghty & Miller, Inc. v. Conoco Inc.*, 243 F.3d 917, 921 (5th Cir. 2000) (acknowledging that the removal action that took place in stages was not barred under CERCLA statute of limitations).

In its supplemental objections, defendant urges this court to consider and apply the recent Seventh Circuit decision in *Bernstein v. Bankert*, 702 F.3d 964 (7th Cir. 2012).  In *Bernstein*, the Seventh Circuit held, *inter alia*, that CERCLA's three-year statute of limitations barred plaintiff's recovery for work performed in 1999 pursuant to an AOC.  *Id.* at 984.  Although additional work was performed in 2002 pursuant to another AOC, the Seventh Circuit found that "[t]he removal actions called for by the AOCs were temporally distinct projects" and thus subject to separate statutes of limitations.  *Id.*  This Court initially notes that the circumstances of *Bernstein* appear distinguishable from the present matter, since in *Bernstein* the removals took place over two years apart and, based upon the facts noted in the decision, appear to be distinct from each other.  In contrast here, the allegations in the complaint indicate that the Phase II Site clean-up was already being contemplated while the Phase I Site clean-up was ongoing, and the EPA's findings of contamination at the nearby Phase II Site were merely a

9

continuation of its findings at Site I.

Regardless, the statute of limitations question in *Bernstein* was decided pursuant to a summary judgment motion, presumably after significant discovery had been conducted by both sides with respect to the relationship between the two clean-ups.  Plaintiff's burden here, on a motion to dismiss, is obviously far less onerous than plaintiff's obligation in *Bernstein*.  NL Industries must only show sufficient allegations to support a claim for which relief may be granted, and this Court must draw all reasonable inferences in favor of plaintiff.  The allegations in the fourth-amended complaint, while certainly not dispositive of the statute of limitations issue, are sufficient to survive a motion to dismiss.  *See Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d. Cir. 2011) (in considering a motion to dismiss, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims").  Therefore, defendant's motion to dismiss Count I is denied.

### *Declaratory Judgment*

CERCLA specifically provides for the entry of declaratory judgments as to liability for future costs.  In any Section 107 action, "the Court shall enter declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."  42 U.S.C. §9613(g)(2).  NI Industries' fourth-amended complaint alleges that, as a direct and proximate case of defendants' actions, "NL has and

10

will continue to incur response costs within the meaning of Section 101 of CERCLA.  Plaintiff also alleges that "[p]ursuant to Section 107(a) of CERCLA...NL is entitled to recover from Defendants all necessary costs of response consistent with the National Contingency Plan that it has incurred and will incur as the Site."

In support of its motion to dismiss, Gould argues that since the EPA has not yet assessed costs against plaintiff with respect to the Phase II Site removal activities, any request for a declaratory judgment is speculative and should not be granted.  Magistrate Judge Scott recommends dismissal of the declaratory judgment request on the ground that there is no indication in the pleadings that the EPA will seek contribution with respect to the clean-up costs for the Phase II Site.  While the Magistrate Judge notes that the EPA "has repeatedly requested plaintiff to perform remediation at the Phase II Site and has demanded reimbursement for EPA's efforts in remediation", he concludes that these documents are not cited or incorporated in the amended complaint and therefore should not be considered.  This Court disagrees, and finds that plaintiff's allegations are sufficient to state a claim for declaratory judgment.

As noted above, plaintiff sufficiently alleges that the Phase I Site and the Phase II Site are part of the same removal action under CERCLA, that it has incurred costs with respect to Phase I, and that the EPA has already determined that additional work will be needed at the Phase II Site.  It is on this basis that

plaintiff alleges that it has, and will continue to, incur response costs within the meaning of Section 107.  These allegation state a claim for declaratory judgment this is "plausible on its face." [3]

Moreover, in the December 17, 2007 letter discussed above, the EPA informed plaintiff of its findings that remediation efforts were needed with respect to the Phase II Site, and that "[i]f [plaintiff did] not offer to conduct or fund the clean-up, EPA may direct [plaintiff] to take such action pursuant to Section 106(a) of CERCLA."  As noted previously, this letter is integral to plaintiff's allegations that the Phase I Site and the Phase II Site are part of a singular removal action, that plaintiff has incurred costs with respect to the Phase I remediation, and that plaintiff will continue to be liable to the EPA for costs that will be incurred during Phase II.  Similarly, the AOC between plaintiff and the EPA, which is specifically referred to in paragraph 12 of the fourth-amended complaint and incorporated therein, states that the EPA believes that plaintiff is responsible for lead contamination in the residential areas of the Superfund Site and that plaintiff is liable to EPA for any response costs at the Superfund Site.  These documents, which the Court may consider together with the complaint, support plaintiff's allegations that it will continue to incur costs during the Phase II Site remediation.

---

[3]  This determination is consistent with this Court's prior decision in this case to deny a motion by defendant Haliburton, Inc. to dismiss plaintiff's claim for declaratory relief.  (Dkt. No. 13) Therein, this Court concluded that plaintiff's claim for incurrence of future response costs was not too speculative to survive a motion to dismiss.

Thus, in construing the allegations in plaintiff's complaint and drawing all reasonable inferences in favor of plaintiff, the Court denies defendant's motion to dismiss the declaratory judgment claim.

### *Contribution and Indemnification*

The Report and Recommendation recommends dismissing both plaintiff's indemnification and state law contribution claims.  Specifically, the Magistrate Judge found that both claims were preempted under CERCLA.  *See Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 138 (2d. Cir. 2010) (since, in enacting CERCLA, Congress intended a single mechanism for apportioning responsibility among responsible parties, common law indemnification under state law is preempted); *W.R. Grace & Co. v. Zotos Int'l, Inc.*, U.S. Dist. LEXIS 8755, at *30-31 (W.D.N.Y. 2005) ("in general, a source of a state law contribution claim must be an obligation imposed by state, rather than federal, law").

Plaintiff does not object to Magistrate Judge Scott's findings with respect to its indemnification and contribution claims.  "To accept the report and recommendation of a magistrate, to which no objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Torres v. New York*, 976 F. Supp. 249 (SDNY 1997).  Here, the Magistrate Judge's recommendation to dismiss the indemnification and contribution claims is neither clearly erroneous nor contrary to law, and will be adopted by this Court.

13

## **CONCLUSION**

The findings of Magistrate Judge Scott are adopted in part and rejected in part.  Specifically, Gould's motion to dismiss is granted with respect to NL Industries' claims of indemnification and contribution (Counts III and IV), but is denied with respect to NL Industries' CERCLA cost recovery and declaratory judgment claims (Counts I and II).  The case is referred back to Magistrate Judge Scott for further proceedings.

SO ORDERED.


____*Richard J. Arcara*_____
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:  March 31, 2014

14