UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NL INDUSTRIES, INC.,

                              Plaintiff,

                                                        **Hon. Hugh B. Scott**

                                                        10CV89W

                    v.                                  **Order**


ACF INDUSTRIES LLC, et al.,

                              Defendants.


        Before the Court is defendant Gould Electronics' ("Gould") motion to compel production

from plaintiff ("plaintiff" or "NL") of non-privileged documents from third-party Advanced

GeoServices Inc. ("AGC") (Docket No. 232[1]).  Responses to this motion were due by April 30,

2015, any reply by May 7, 2015, and the motion was deemed submitted on the papers on May 7,

2015 (Docket No. 233).  Codefendant Halliburton wrote (Docket No. 234) requesting to adjust

the current Fourth Amended Scheduling Order (Docket No. 231), and this Court instead held

those deadlines in abeyance pending resolution of Gould's motion (Docket No. 235).

---

[1] In support of this motion, Gould submitted its attorney's Affidavit and Memorandum of
Law, Docket No. 232; and its Reply Memorandum, Docket No. 237.  In response, plaintiff filed
its opposing Memorandum of Law, Docket No. 236.

BACKGROUND

This is a CERCLA[2] action arising from the cleanup at the Buffalo Plant Superfund site in Depew, New York (see Docket No. 154, Report & Rec., Feb. 15, 2012, at 2).  Under the current Scheduling Order (Docket No. 231), liability phase discovery was to conclude by June 15, 2015, with dispositive motions on liability due by August 14, 2015 (id.), but that schedule has been held in abeyance given the pending motion (Docket No. 235).

Gould contends that non-party AGC is an environmental engineering firm hired by plaintiff to manage the cleanup of residential properties in Depew that the United States Environmental Protection Agency ("EPA") determined were contaminated from plaintiff's brass foundry and "develop and present technical arguments to persuade [the] EPA to treat Gould . . . and other defendants as liable parties under the federal Superfund law, rather than" plaintiff (Docket No. 232, Def. Gould Memo. at 1).  Gould claims that plaintiff cites to AGC to support its contentions that others, including Gould, are responsible rather than plaintiff and identified two AGC employees as fact witnesses that plaintiff may use to support its claims at trial (id.).

Gould sought documents from plaintiff and later subpoenaed AGC for discoverable material given AGC's involvement in the Phase I removal and plaintiff identifying two AGC officials as having discoverable information (id. at 8-9).  On February 20, 2015, plaintiff provided a privilege log for AGC documents withheld from production to Gould, with some log entries listing documents without full identifying information (as to the date, author, and/or recipient of the withheld items) (id. at 9).  Gould requested that plaintiff withdraw its attorney-client privilege claims because the contractor provided non-legal services and thus did not fall

---

[2]Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §§ 9601, et seq., also known as the Superfund Law.

under the privilege or waived such privilege by providing some of these documents to the EPA (id. at 10).  Plaintiff then submitted a revised privilege log, reasserting the privilege as to some documents (id. at 10-11).  Disputed now are 192 digital AGC documents and 11 hard copies (id. at 11).  Gould seeks production of four categories of claimed privileged AGC documents: materials related to the January 17, 2007, presentation and February 28, 2007, letter to the EPA; emails regarding AGC's investigation of the sources of fill material and "other potentially responsible parties"; emails regarding other meetings and correspondence with the EPA; and documents regarding soil sampling, fill material, excavation/aerial photographs, air models, "wind," and an unidentified "interview" (id. at 12-13).

Specifically, these documents can be divided into four categories.  Group A constitutes 66 documents which are drafts of plaintiff's eventual February 28, 2007, correspondence to the EPA and internal correspondence regarding that letter (Docket No 236, Pl. Atty. Decl. ¶ 18). Group B is 7 documents that are internal to plaintiff, its counsel, and AGC correspondence regarding legal options following discovery of black, foreign fill during Phase I cleanup (id. ¶ 19).  Group C consists of four documents, two of which are drafts of the February 28, 2007, EPA letter that are duplicates within Group A and two non-privileged documents that were separately produced (id. ¶ 20).  Finally, Group D is 43 documents of cover emails between AGC, plaintiff, and plaintiff's counsel exchanging Sanborn maps or other factual material "related to the development of NL's legal strategy" (id. ¶ 21).  Included with this last group are six documents (Nos. 167-72 of the Privilege Log) that were produced to Gould (Docket No 236, Pl. Atty. Decl. ¶ 21).

Gould argues that communication to and from AGC should not be privileged as attorney-client communication (Docket No. 232, Def. Gould Memo. at 14-18). Gould contends that communications to and from AGC, as a non-party environmental consultant, was not shielded by attorney-client privilege since AGC was not providing legal services and were not attorney-client communications (id. at 14-16). These documents also are not communications from AGC as an interpreter or translator, assisting the attorney-client communication to retain confidentiality and the privilege despite going to a third party (id. at 16-17). By sending them to AGC, Gould concludes that plaintiff waived any attorney-client privilege (id. at 16-18), despite plaintiff's protestations that the communications were at the direction of counsel (id. at 17-18). Plaintiff also waived whatever privilege it had by presenting some of these privilege log documents to the EPA (id. at 18-22). Gould also argues that plaintiff waived any privilege by intending to call AGC personnel as fact witnesses (id. at 22-24), United States v. Nobles, 422 U.S. 225, 239-40 (1975).

Plaintiff claims privilege for these documents as "internal comments on working drafts of legal position papers, communications between NL, its consulting expert and its counsel to evaluate its legal options, and cover emails responding to specific information requests by NL or its counsel," which plaintiff had not waived (Docket No. 236, Pl. Memo. at 11, 12-15). Plaintiff responds that AGC is an environmental consulting firm which serves as a consulting expert to help plaintiff evaluate potential claims it may have against Gould and the other defendants and evaluate plaintiff's potential defenses against the EPA (id. at 1). Of the nearly 11,000 documents produced by AGC pursuant to the subpoena, in dispute are 11 hard copy pages and 192 digital documents that plaintiff claims are privileged (id.). Plaintiff argues that these documents are

covered either by attorney work product (id. at 11-12) or attorney-client privileges (id. at 16-17) for the email exchanges between plaintiff and its attorneys (id.), including representatives of attorneys, such as non-testifying experts (id. at 17).  The two AGC officials identified by plaintiff are not experts, hence their correspondence (and the rest of AGC privileged documents) regarding plaintiff's legal position (and not the facts) constitute work product (id. at 17).

Gould replies that plaintiff cannot now recast AGC's role, that this firm has fact witnesses and is not a "consulting expert" to keep its correspondence confidential (Docket No. 237, Def. Gould Reply Memo. at 2).  AGC officials are not experts employed for trial preparation or will be called as expert witnesses in this case to have Rule 26(b)(4)(D) apply (id. at 2-3).  Gould next argues that plaintiff cannot rely upon Rule 26(b)(3)(B) to exclude disclosure of core opinion work product since AGC's materials do not meet that rule's standard (id. at 4-5) and opinion work product is usually legal opinion, see Favors v. Cuomo, 285 F.R.D. 187, 199 (E.D.N.Y. 2012) (id. at 5).  Gould faults the privilege log for not allowing opponents to assess the confidentiality claims for the listed privileged documents (id. at 6-7).  Gould denies that AGC was a "client information translator" for plaintiff and its attorney to retain the attorney-client communication privilege (id. at 7).  As work product, Gould concedes that these documents might have been prepared in anticipation of litigation but plaintiff ultimately waived this privilege by disclosing AGC's technical analyses to EPA by listing two AGC employees as fact witnesses (id. at 9-10).

DISCUSSION

As for the non-privileged or already produced items (portions of Group C and Group D) on plaintiff's privilege log, Gould's motion to compel their production is **deemed moot**.  For

example, from Group D, six documents (entries 167-72) were already produced (Docket No. 236, Pl. Memo. at 10), while other parts of Group D were transmitting memoranda for Sanborn maps and other items that were produced (id. at 9, 10).  Similarly, duplicate documents in Group C to those identified in Group A need not be produced twice.  Thus, at issue are documents in Groups A (documents leading to the EPA presentation in 2007) and B (documents discussing what to do about the discovery of black fill material during Phase I of the cleanup) (id. at 9).

The parties discuss two privileges (cf. id. at 16), with Gould arguing against attorney-client communication privilege (Docket No. 232, Def. Gould Memo. at 14-18; Docket No. 237, Def. Gould Reply Memo. at 6-8) and plaintiff arguing attorney work product (Docket No. 236, Pl. Memo. at 11-12) as well as attorney-client privilege (id. at 16-17).

I.      Attorney-Client Privilege

Attorney-client privilege in the Second Circuit protects communications between client and counsel that is intended to be confidential, for the purpose of obtaining or providing legal advice, United States v. Mejia, 655 F.3d 126, 132 (2d Cir.) (citation omitted), cert. denied, ___ U.S. __, 132 S. Ct. 533 (2011) (Docket No. 232, Def. Gould Memo. at 14), see also Fed. R. Evid. 502.  Ordinarily, this privilege is waived when a communication is voluntarily disclosed to a third party, Fine v. ESPN, Inc., No. 5:12CV0836, 2015 U.S. Dist. LEXIS 68704, at *26 (N.D.N.Y. May 28, 2015) (citations omitted), but where that third party "facilitates communication between the attorney and client, or acts as either's agent," id., the privilege remains.

Plaintiff argues that attorney work-product privilege establishes a zone of privacy for documents prepared "in anticipation of litigation by or for a party, or by or for his

representative" (Docket No. 236, Pl. Memo. at 11), <u>ECDC Env'l, L.C. v. New York Marine &</u> <u>Gen. Ins. Co.</u>, No. 96 Civ. 6033, 1998 U.S. Dist. LEXIS 8808, at *31 (S.D.N.Y. June 5, 1998). Documents and other tangible things prepared in anticipation of litigation are not ordinarily subject to discovery, Fed. R. Civ. P. 26(b)(3)(A) (Docket No. 236, Pl. Memo. at 11).  One factor in determining whether an expert like AGC can be cloaked with a derivative privilege from the attorney is which entity retained the expert; was it the attorney or the client?  1 Edna S. Epstein, <u>The Attorney-Client Privilege and the Work-Product Doctrine</u>, at 218 (5th ed. 2007).

But AGC is not a representative of plaintiff's attorney such as are accountants, administrative practitioners not admitted to the bar, or non-testifying experts, <u>United States</u> <u>Postal Serv. v. Phelps Dodge Ref. Corp.</u>, 852 F. Supp. 156, 161 (E.D.N.Y. 1994) (scope of attorney-client privilege extends to representatives of attorney).  Plaintiff, and not any of its attorneys, retained AGC (<u>see</u> Docket No. 236, Pl. Atty. Decl. ¶ 3).  For documents qualifying as attorney-client communication, inclusion of AGC in the communication does constitute waiver, <u>United States v. Ackert</u>, 169 F.3d 136, 139-40 (2d Cir. 1999) (Docket No. 232, Def. Gould Memo. at 18 & n.66). No agency relationship has been established between plaintiff's counsel and AGC to include AGC's correspondence as coming from the attorney for this privilege to apply, despite the notations in the privilege log that certain AGC actions were done at the direction of counsel.  Plaintiff has not shown that AGC acted like an interpreter or translator of client communications to shield AGC's correspondence with plaintiff's counsel, <u>see</u> <u>Ackert</u>, <u>supra</u>, 169 F.3d at 139-40; <u>cf.</u> <u>United States v. Kovel</u>, 296 F.2d 918, 922 (2d Cir. 1961).

It is clear that, save some cover emails, there is no attorney-client communication here; these documents came from AGC.  Thus, on this privilege, defendant Gould's motion is

**granted**.  As for the correspondence solely between plaintiff and its attorneys (Group B and

portions of Group D documents), this correspondence **is covered by the attorney-client**

**privilege and need not be produced**; Gould's motion on these items is thus **denied**.  This Court

next turns to the attorney work product claim.

II.     Attorney Work Product Doctrine

        Plaintiff alternatively claims attorney work product privilege.  Work product under

Rule 26(b) "creates a qualified immunity from discovery for:  (1) documents or tangible things,

(2) prepared in anticipation of litigation of for trial, (3) by or for a party or by or for the party's

representative," Foti v. City of Jamestown Board of Public Utils., No. 10CV575, 2014 U.S. Dist.

LEXIS 108376, at *7 (W.D.N.Y. Aug. 5, 2014) (Scott, Mag. J.) (Docket No. 88, Order); see

8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure

§ 2024, at 336 (Civil 2d ed. 1994).  The litigation for which the documents were prepared need

not be this particular case, but may be related actions, 8 Wright, Miller & Marcus, supra, § 2024,

at 350-51, 353-54.  The applicability of this privilege is governed by federal law, Bowne of New

York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 471 (S.D.N.Y. 1993); ECDC Envtl., supra,

1998 U.S. Dist. LEXIS 8808, at *30-31.  This privilege establishes a zone of privacy for an

attorney's preparation to represent a client in anticipation of litigation, Foti, supra, 2014 U.S.

Dist. LEXIS 108376, at *8; see Hickman v. Taylor, 329 U.S. 495, 510-11 (1947); United States

v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998).  As noted by this Court in Foti, supra, 2014 U.S.

Dist. LEXIS 108376, at *8-9,

> "The party asserting the work-product privilege 'bears the heavy burden of
> establishing its applicability.'  In re Grand Jury Subpoena Dated July 6, 2005,
> 510 F.3d 180, 183 (2d Cir. 2007).  The privilege includes both opinion work
> product, such as an attorney's mental impressions or legal theories, and fact work

product, such as factual investigation results.  See In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d at 183; see also Fed. R. Civ. Proc. 26(b)(3)(B) (codifying protection for opinion work product).  In order for a party 'to assert privilege under the attorney work product doctrine, they must be able to show that the document[ ][was] prepared (1) "in anticipation of litigation" (2) by a party or its representative and (3) not in the ordinary course of business.'  Ricoh Co., Ltd. v. Aeroflex Inc., 219 F.R.D. 66, 68 (S.D.N.Y. 2003); see also Schomburg v. New York City Police Dept., 298 F.R.D. 138 (S.D.N.Y. 2014). See also United States v. Adlman, 134 F.3d 1194, 1202 (2d. Cir. 1998) (the work product doctrine does not require that the documents be prepared at the behest of counsel, only that they be prepared 'because of' the prospect of litigation.) See also United States v. Nobles, 422 U.S. 225, 238-39, 95 S. Ct. 2160, 45 L. Ed. 2d 141 (1975)('attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial,' and therefore 'the doctrine protect[s] material prepared by agents for the attorneys as well as those prepared by the attorney for himself.').  Once a party establishes that its document is protected by the work-product privilege, the burden shifts to the party seeking discovery to prove that discovery is warranted."

The work product doctrine

"shelters the mental processes of the attorney, providing a privileged area within which he [or she] can analyze and prepare his [or her] client's case.  But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system.  One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial.  It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself,"

United States v. Nobles, 422 U.S. 225, 238-39 (1975) (quoted in Coastline Terminals of Conn., Inc. v. United States Steel Corp., 221 F.R.D. 14, 17 (D. Conn. 2003)).

This privilege may be waived and "the party asserting the protection afforded by the work product doctrine has the burden of showing both that the protection exists and that it has not been waived," Bank of Am., N.A. v. Terra Nova Ins. Co., 212 F.R.D. 166, 169 (S.D.N.Y. 2002); Foti, supra, 2014 U.S. Dist. LEXIS 108376, at *10.  The test for waiver is "whether the disclosure at issue has 'substantially increased the opportunities for potential adversaries to

obtain the information,'" In re Vitamin C Antitrust Litig., No. MD 06-1738, 2011 U.S. Dist.

LEXIS 5466, at *9 (E.D.N.Y. Jan. 20, 2011) (Orenstein, Mag. J.) (quoting In re Visa

Check/Master Money Antitrust Litig., 190 F.R.D. 309, 314 (E.D.N.Y. 2000); see Foti, supra,

2014 U.S. Dist. LEXIS 108376, at *11.  This waiver differs than from the attorney-client

communication privilege, where disclosure in the latter situation to a third party will

automatically waive that privilege, Carpenter v. Churchville Greene Homeowner's Ass'n,

No. 09CV6552, 2011 U.S. Dist. LEXIS 115948, at *27-28 (W.D.N.Y. Sept. 29, 2011) (Payson,

Mag. J.); Coastline Terminals, supra, 221 F.R.D. at 16; "a waiver of work product protection

occurs when the covered materials are used in a manner that is inconsistent with the protection,"

Bank of Am., supra, 212 F.R.D. at 169-70; Carpenter, supra, 2011 U.S. Dist. LEXIS 115948, at

*28.

      Plaintiff (and not its attorneys) retained AGC years before this litigation was commenced.

As a CERCLA case, it is natural that part of AGC's mandate would be to identify other parties

that might be liable for the costs being incurred in the cleanup.  The correspondence and

documents listed in this privilege log involve responding to the EPA regarding the status of the

Phase I cleanup.  Plaintiff argues that outside counsel prepared from these materials a

PowerPoint presentation to the EPA explaining that other parties are responsible for the

conditions on the Depew site (Docket No. 236, Pl. Memo. at 2).  Plaintiff also claims that AGC

was retained as a consulting expert to identify those other entities responsible for the cleanup

costs (see id. at 5), in anticipation of litigation against the EPA and/or third parties (id. at 6).

      Courts in this Circuit have held that this privilege extends to communications made by

agents of the attorney hired to render legal services, United States Postal Serv. v. Phelps Dodge

Refining Corp., 852 F. Supp. 156, 161 (E.D.N.Y. 1994), and "can attach to reports of third

parties made at the request of the attorney or the client where the purpose of the report was to put

in usable form information obtained from the client," Kovel, supra, 296 F.2d at 922 (emphasis

added); Coastline Terminals, supra, 221 F.R.D. at 16.  In Phelps Dodge Refining, the court held

that the third parties "were hired by defendants to formulate a remediation plan acceptable to the

[New York State Department of Environmental Control [sic]] and to oversee remedial work at

the Property.  Their function was not to put information gained from defendants into usable form

for their attorneys to render legal advice, but rather, to collect information not obtainable directly

from defendants," Phelps Dodge Refining Corp., supra, 852 F. Supp. at 161; see Coastline

Terminals, supra, 221 F.R.D. at 16.  In Coastline Terminals of Connecticut, the defense expert

also was not hired to assist counsel in rendering legal advice and was identified as defendants'

expert, 221 F.R.D. at 16.  The court there declared that the documents from the third party expert

were outside of the attorney-client privilege and were thus discoverable, id., because disclosure

to a third party destroys the confidentiality of the communication as an attorney-client

communication, id., quoting ECDC Envtl., supra, 1998 U.S. Dist. LEXIS 8808.  But similar

disclosure under the work product doctrine only constitutes a waiver of the privilege, Coastline

Terminals, supra, 221 F.R.D. at 16.  The court in Coastline Terminals considered in camera the

disputed documents, determining (among other things) whether a legal opinion was sought or

given associated with a disputed document.  That court deemed some documents to be not

privileged (such as facsimile transmission cover sheets or correspondence from the expert to

counsel) and subject to disclosure and found other documents were subject to disclosure due to

waiver of the privilege or from the finding that the expert there would testify, id. at 17-19.

11

In ECDC Environmental, the court found that the expert's factual and scientific evidence and the opinions and recommendations derived therefrom did not come through client confidences and thus was not protected by attorney-client privilege, concluding that "there are few, if any, conceivable circumstances where a scientist or engineer employed to gather data should be considered an agent within the scope of the privilege since the information collected will generally be factual, obtained from sources other than the client," 1998 U.S. Dist. LEXIS 8808, at *22-23 (quoting Phelps Dodge Refining Corp., supra, 852 F. Supp. at 161-62).  But for work product, one condition for that privilege is if the material was prepared by or for a party, by or for its representative, id. at *31 (quoting In re Grand Jury Subpoenas Dated December 18, 1981 & January 4, 1982, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982) (McLaughlin, J.)).  The court, after reviewing the disputed documents in camera, found that the items were protected by work product doctrine, id. at *36; see also Atlantic Richfield Co. v. Current Controls, Inc., No. 93CV950, 1997 U.S. Dist. LEXIS 13082, at *6 (W.D.N.Y. Aug. 21, 1997) (Elfvin, J.) (work product doctrine upheld where plaintiff had subjective belief that litigation over contamination studied by expert might ensue).

Here, plaintiff in parallel retained both AGC, to guide it through the cleanup and to identify possible responsible parties and defenses for plaintiff and attorneys, and its attorneys to provide its legal defense and advocate for its claims.  AGC is preparing the materials for plaintiff, at the behest of counsel (according to the privilege log entries).  A review of the privilege log (Docket No. 232, Ex. S) reveals that Group A documents involve a PowerPoint presentation made by AGC and plaintiff's counsel to the EPA in January 2007 (Docket No. 236, Pl. Memo. at 8-9; Docket No. 232, Def. Gould Memo. at 12).  Plaintiff claims that it is

12

undisputed that these documents were created in anticipation of litigation (defending plaintiff against the EPA as well as identifying possible claims against other parties) and thus are work product (Docket No. 236, Pl. Memo. at 11-12).  These documents appear to be the raw materials used to create the PowerPoint presentation made to the EPA and eventually produced to defendants in this action.

With this privilege applying to these items listed in the privilege log, this Court next turns to the question whether plaintiff somehow waived the privilege.

III.    Waiver

Alternatively, Gould argues that plaintiff waived any privilege by disclosing these documents to third parties (either to the EPA or to AGC itself).  The documents here in Group A are exchanges of drafts of the eventual report to the EPA.  There is no indication that these drafts were submitted to that agency or went beyond plaintiff, its consultant AGC, and its counsel.  Thus, there is no waiver and Gould's motion to compel production based upon waiver is **denied**.

As for attorney-client communications, sending items to AGC without AGC being an interpreter between attorney and client waives that privilege.  As for work product, the privilege log documents at issue were preparatory to submitting another document to the EPA, an adversary to plaintiff in the Superfund cleanup (if not an adversary in the subsequent action now before this Court).  The final PowerPoint document was produced to the EPA as well as produced in discovery in this case; the issue here is about the raw materials, the potential draft documents should also be produced.  Disclosure of these documents would "'substantially increase[] the opportunities for potential adversaries to obtain the information,'" In re Vitamin C Antitrust Litig., supra, 2011 U.S. Dist. LEXIS 5466, at *9 (quoting In re Visa Check/Master

Money Antitrust Litig., supra, 190 F.R.D. at 314.  Therefore, plaintiff has **not waived** the

attorney work privilege and defendant Gould's motion to compel their production (Docket

No. 232) is **denied**.

IV.     Fifth Amended Scheduling Order

        With the resolution of this discovery motion, the Scheduling Order (cf. Docket No. 231)

can be restarted and deadlines adjusted accordingly.  As for the liability phase (id.), discovery

shall run until **October 30, 2015**, with motions to compel this discovery due thirty days prior to

this deadline; and with expert disclosure of parties with affirmative burdens of proof by

**August 31, 2015**; and responding parties' expert disclosure as to liability by **September 30,**

**2015**.  Liability phase dispositive motions therefore are due by **January 28, 2016** (or 90 days

from the conclusion of this phase of discovery).

        Upon resolution of such dispositive motions (or the passage of this deadline with no

motions being filed), this Court will schedule allocation phase proceedings, if necessary.

                                        CONCLUSION

        For the reasons stated above, defendant Gould Electronics' motion (Docket No. 232) to

compel production of non-privileged materials from Advanced GeoServices Inc. and plaintiff is

**granted in part, denied in part as indicated above**, with attorney-client correspondence

described above not to be produced and deeming as moot compelled production of items already

produced.

The Scheduling Order (<u>cf.</u> Docket No. 231) is restarted with extended dates as discussed above.

So Ordered.

/s/ Hugh B. Scott

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
       July 2, 2015